IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD K. MCCALL, | : |
|         Plaintiff, | :   CIVIL ACTION |
| v. | : |
| CAROLYN W. COLVIN, | :   NO. 13-4770 |
| Acting Commissioner of Social Security, | : |
|         Defendant. | : |

<u>MEMORANDUM</u>

BUCKWALTER, S.J.                                                                                          December 21, 2015

Currently pending before the Court are Plaintiff Richard K. McCall's Objections to the Report and Recommendation of United States Magistrate Judge Marilyn Heffley. For the following reasons, the Objections are overruled.

I.     PROCEDURAL HISTORY

On February 18, 2010, Plaintiff Richard McCall, then forty-five years old, filed applications for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, <u>et seq.</u>, and Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381, <u>et seq.</u> (R. 171–185.)[1] His claim alleged disability since April 1, 2007, due to anxiety, panic attacks, hepatitis C, and drug addiction. (<u>Id.</u> at 213.) The state agency denied both of Plaintiff's applications on June 2, 2010. (<u>Id.</u> at 75–76.) Plaintiff

---

[1] For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

timely requested a hearing before an administrative law judge ("ALJ").  (Id. at 84.)  A hearing was initially conducted on June 23, 2011, at which Plaintiff and Plaintiff's mother, Judy McCall, both testified.  (Id. at 23–65.)  After granting Plaintiff's attorney time to submit additional records, the ALJ held a supplemental hearing on October 2, 2011, during which Plaintiff testified again, along with a vocational expert.  (Id. at 66–74.)  Subsequently, ALJ Theodore Burock issued a decision, dated November 22, 20111, deeming Plaintiff "not disabled."  (Id. at 9–22.)  Plaintiff then filed an appeal.  (R. 6–8.)  On June 18, 2013, the Appeals Council denied Plaintiff's request for review, (id. at 1–5), making the ALJ's ruling the final decision of the agency.  See 20 C.F.R. §§ 404.972, 416.1572.

Plaintiff initiated the present civil action in this Court on August 19, 2013.  His Request for Review set forth three alleged errors as follows: (1) the ALJ erred in evaluating the opinions of Plaintiff's treating physician and the consultative examiner; (2) Plaintiff's bipolar disorder met Listing 12.04 at step three of the sequential evaluation process; and (3) the residual functional capacity ("RFC") assessment is not supported by substantial evidence.  On April 22, 2015, United States Magistrate Judge Marilyn Heffley issued a Report and Recommendation ("R&R") recommending that Plaintiff's Request for Review be denied.

Plaintiff filed Objections to the R&R on May 6, 2015,[2] asserting that: (1) the Magistrate Judge improperly found that the ALJ did not err in evaluating the opinions of Plaintiff's treating physician and consultative examiner; (2) the Magistrate Judge improperly found that the ALJ's step three analysis is supported by substantial evidence; and (3) the Magistrate Judge erred in

---

[2] Unfortunately, as regrettably happens on rare occasion, this case got temporarily "lost in the shuffle," thus explaining the lengthy delay in the Court's ruling on the Objections.

finding that the RFC and hypothetical to the vocational expert properly reflected Plaintiff's moderate limitation in concentration, persistence, or pace.  Defendant responded to these Objections on May 14, 2015.

## II.   STANDARD OF REVIEW[3]

### A.   Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)).  When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  In other words, even if the reviewing court, acting de novo, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence.  Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).  In an adequately developed factual record,

---

[3] The five-step sequential analysis for assessing a disability claim was adequately summarized by the Magistrate Judge.  In lieu of repeating that discussion, the Court incorporates by reference that portion of the R&R into this Memorandum.

substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

    B.    **Standard of Review of Objections to a Report and Recommendation**

Where a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in de novo review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See United v. Raddatz, 447 U.S. 667, 676 (1980).

**III.    DISCUSSION**

    A.    **Whether the ALJ Erred by Failing to Give Appropriate Weight to the Opinions of Treating and Examining Physicians**

Under applicable regulations and controlling case law, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). A treating source's opinion on the issue of the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The factors to be considered in assigning the appropriate weight to a medical opinion include: length of treating relationship and frequency of examination, nature and extent of treating relationship, supportability, consistency, specialization, and other relevant factors. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317–18 (3d Cir. 2000) (quotations omitted). Further, when disregarding such an opinion, the ALJ must explain on the record his reasons for doing so. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). It cannot be "for no reason or for the wrong reason." Morales, 225 F.3d at 317 (quotations omitted). At the end of the analysis, however, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and [residual functional capacity] determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2000).

Plaintiff now contends that the ALJ failed to give appropriate weight to both the opinion of his treating physician Dr. Covaci and the consultative examiner, Dr. Philip Taylor. The Court

addresses each individually.

### 1. **Dr. Covaci**

The ALJ discussed Dr. Covaci's opinion as follows:

In March 2011, Letitia Covaci, M.D., of T.W. Ponessa, performed a psychiatric evaluation of the claimant, as is discussed above . . . . Dr. Covaci noted that the claimant is anxious, moody, irritable, short tempered and easily frustrated. Dr. Covaci also noted that the claimant has difficulty sleeping. Upon examination, Dr. Covaci noted that the claimant is anxious and overwhelmed. However, Dr. Covaci also noted that the claimant is alert and oriented. Dr. Covaci noted that the claimant's cognition, memory, judgment and insight are good. Dr. Covaci diagnosed the claimant as having anxiety disorder, mood disorder and probable bipolar disorder and assessed his GAF score at 50 to 55. At a follow up appointment in April 2011, Dr. Covaci noted that the claimant's affect is only slightly restricted. Dr. Covaci also noted that the claimant reported that his symptoms are improved with psychotropic medication. Dr. Covaci assessed the claimant's GAF score at 55 to 60. The record indicates that the claimant continued to follow up at T.W. Ponessa for routine medication management until September 2011 . . . . In September 2011, the claimant's GAF score was assessed at 50, relative to a recent decrease in his Methadone prescription. The undersigned gives limited weight to the September 2011 GAF score of 50, as it is inconsistent with the medical evidence of record.
. . .
As for the opinion evidence, Dr. Covaci, the claimant's treating psychiatrist, prepared a medical source statement, noting that the claimant has a marked restriction in his ability to understand, remember and carry out complex instructions, as well as an extreme limitation in his ability to make judgments on complex work related decisions . . . . Dr. Covaci also noted that the claimant has a marked restriction in his ability to respond appropriately to usual work situations and to changes in a routine work setting. Dr. Covaci noted that the claimant has a moderate restriction in his ability to interact with supervisors and coworkers. The undersigned gives significant weight to Dr. Covaci's assessment, to the extent that it supports the undersigned's finding that the claimant is limited to performing routine, repetitive tasks and avoiding contact with the public and coworkers. As the claimant's treating psychiatrist, Dr. Covaci has had the opportunity to observe the functional limitations caused by the claimant's mental impairments. However, the undersigned notes that there is no evidence contained within the record in support of the above noted extreme limitation in the claimant's ability to make judgments on complex work related decisions.

As is discussed above, the record indicates that the claimant's GAF score has consistently been assessed between 55 and 65, which demonstrates the existence of

>an impairment which will produce moderate symptoms. The Undersigned gives significant weight to the aforementioned assessments, as they were provided by claimant's examining psychiatric practitioners. Further, the above discussed GAF scores are consistent with the objective findings noted throughout the record.

(R. 18–19.)

Upon review of this decision, the Magistrate Judge found that the ALJ's evaluation of Dr. Covaci's opinion was legally sound and supported by substantial evidence. (R&R 4.) The Magistrate Judge remarked that the ALJ's decision to accord significant weight to Dr. Covaci's opinion to the extent it agreed with the RFC, but not give weight to the portions of the opinion that were inconsistent with the RFC, was proper. She observed that the ALJ cited to evidence of record that supported his RFC analysis, including GAF scores, treatment notes, evaluation observations, and the opinions of the state agency psychiatric consultant, Dr. Charles Lawrence.

Plaintiff now contends that both the ALJ's decision, and the Magistrate Judge's affirmation of that decision, are improper for five reasons. First, Plaintiff suggests that the ALJ's reasoning was improperly conclusory and involved "cherry picking" of Dr. Covaci's opinion, contrary to the "cardinal principle" that the ALJ must view the record as a whole. While an ALJ is bound to consider the entire record, Plaintiff's application of this principle is legally incorrect. So long as the ALJ considers the entirety of a record, the ALJ remains free to accept portions of medical opinions that are supported by substantial evidence of record, while disregarding those that are unsupported by the evidence of record. See, e.g. Ross v. Colvin, No. Civ.A.14-990, 2015 WL 1636132 (M.D. Pa. Apr. 8, 2015) (upholding ALJ's decision that accepted portions of treating physician's opinion to the extent consistent with the record, but rejected portions of the opinion to the extent undermined by the record); Kraft v. Barnhart, No. Civ.A.04-1121, 2005 WL

950607, at *4 (E.D. Pa. Apr. 22, 2005) (same).[4] Moreover, the Third Circuit has repeatedly held that when a treating physician's notes, analyzed as a whole, contradict the physician's opinion on a claimant's ability to work, an ALJ may properly rely on those notes in determining that the opinion is entitled to little or no weight. See, e.g., Dula v. Barnhart, 129 F. App'x 715, 719 (3d Cir. 2005); Humphreys v. Barnhart, 127 F. App'x 73, 76 (3d Cir. 2005).

Second, Plaintiff asserts that the Magistrate "tried to justify the ALJ's unsubstantiated evaluation of Dr. Covaci's opinion by arguing that 'McCall reported that his symptoms are improved with psychotropic mediation.'" (Pl.'s Objections 3 (citing R&R 8).) He goes on to assert that "this somewhat vague logic does not automatically indicate that McCall lacks mental health symptoms or resultant limitations." (Pl.'s Objections 3.) Notably, however, an ALJ may properly discount a treating source's opinion on the basis of claimant's improvement while medicated. See Hyer v. Colvin, 72 F. Supp. 3d 479, 493 (D. Del. 2014).

---

[4] The cases cited by Plaintiff are inapposite. Gallant v. Heckler simply noted that "[a]lthough it is within the power of the Secretary to make findings concerning the credibility of a witness and to weigh conflicting evidence, . . . he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." 753 F.2d 1450, 1456 (9th Cir. 1984). The ALJ in this case did no such thing, but rather found that some parts of Dr. Covaci's opinion were supported by record evidence, while other parts were not.
Plaintiff also cites Smith v. Bowen, 687 F. Supp. 902 (S.D.N.Y. 1988) for the proposition that "[t]he attempt to use only portions of a doctor's report favorable to a position, while ignoring other parts is improper." (Pl.'s Objections 3.) In actuality, this case held that "[a]lthough the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony . . . he cannot pick and choose evidence that supports a particular conclusion." Id. at 904. Smith had no blanket prohibition on accepting portions of a treating doctor's reports and rejecting others. In any event, the ALJ did not ignore any part of Dr. Covaci's opinion, but simply found that the marked limitations she imposed on Plaintiff—given without explanation— were undermined by other evidence of record.

Third, Plaintiff challenges the Magistrate Judge's reference to Plaintiff's GAF scores of between 55 and 65 to support the weight the ALJ assigned to Dr. Covaci's opinion. He contends that the American Psychiatric Association has recommended that the GAF score be dropped from the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") due to "questionable psychometrics in routine practice." DSM-5 at 16.

"While the significance and use of GAF scores has been debated since the GAF scale was eliminated from the Diagnostic and Statistical Manual of Mental Disorders, an ALJ is not precluded from considering GAF scores as evidence." Sherman v. Colvin, No. Civ.A.15-281, 2015 WL 4727298, at *16 (M.D. Pa. Aug. 10, 2015). As explained in Forster v. Colvin,

> Due to concerns about subjectivity in application and a lack of clarity in the symptoms to be analyzed, the [American Psychiatric Association] abandoned the GAF score in its recently published fifth edition of the Diagnostic and Statistical Manual [of Mental Disorders] ("DSM–5")." Solock ex rel. F.A.R.P v. Astrue, No. 1:12–CV–1118, 2014 WL 2738632, at *6 (M.D. Pa. June 17, 2014) (citing Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders 5d,* 16 (2013)). "It was recommended that the GAF be dropped from DSM–5 for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." See Am. Psychiatric Ass'n, Diagnostic and Stat. Manual of Mental Disorders, DSM–516 (5th ed. 2013). In response, the Social Security Administration now allows ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; however, a "GAF score is never dispositive of impairment severity," and thus an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence." SSA AM–13066 at 5 (July 13, 2013).

No. Civ.A.13-2699, 2015 WL 1608741, at *9 n.2 (M.D. Pa. Apr. 10, 2015). In this case, the ALJ gave the GAF scores assigned by Dr. Corvaci significant, but not controlling weight, based on the fact that they were provided by Plaintiff's examining psychiatric practitioners and were otherwise consistent with the evidence of record. Plaintiff identifies no jurisprudence that would preclude the ALJ from relying on the GAF scores in the manner in which he did.

Fourth, Plaintiff asserts, in cursory fashion, that "if the ALJ was unsure as to the basis of Dr. Covaci's opinion, he had the option to recontact him for clarification in accordance with SSR 96-5p." (Pl.'s Objections 4.)  Social Security Ruling 96–5p, however, only provides that, "[b]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."  Social Security Ruling 96-5, 1996 WL 374183, at *6 (S.S.A. July 2, 2006).  Under these standards, nothing in the record before the Court triggered the ALJ's duty to recontact Dr. Covaci.  "[T]he regulation makes clear that the ALJ only need re-contact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled," not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records.  Becker v. Barnhart, No. Civ.A.03–6373, 2005 WL 747047, at *5 (E.D. Pa. Apr. 1, 2005).  Indeed, it is well-established that "[w]hen the treating physicians' conclusions are inconsistent with the objective medical evidence in the record, or the limitations on a claimants' ability reported by the treating physicians are not supported by objective medical evidence, the ALJ is permitted to give these conclusions little or no weight."  Id. at *4.  In such a case, an ALJ is not obligated to re-contact the treating physician and request an explanation of the inconsistency between the physician's treatment notes and his assessment.  See Thurman v. Barnhart, No. Civ.A.05-5447,  2007 WL 2728656, at *7 (E.D. Pa. Sept. 18, 2007).

Finally, Plaintiff remarks simply that Dr. Covaci's opinions in the medical source statement were supported by the finding of the consultative examiner.  It is crucial, however, that

the ALJ gave significant weight to the majority of Dr. Covaci's opinion, some of which did not correspond to that of the consultative examiner. To the extent the ALJ discounted the portion of Dr. Covaci's opinion that imposed marked restrictions on Plaintiff's ability to respond appropriately to work situations and to changes in a routine work setting, the ALJ appropriately found that the other substantial evidence of record—including treatment notes, examination observations, GAF scores, and the state agency consultant's opinion—undermined the validity of Dr. Covaci's assessment. As such, the mere fact that some evidence supported Dr. Covaci's opinion did not dictate that the ALJ ignore the other contradictory evidence in the record.

In short, the Court finds no error in the ALJ's assessment of Dr. Corvaci. As such, this portion of Plaintiff's first Objection is overruled.

### 2. Dr. Philip Taylor

With respect to Dr. Taylor, the ALJ remarked:

> Philip Taylor, Ph.D. performed a consultative examination of the claimant, noting that the claimant's affect varies from sad to anxious . . . . Dr. Taylor noted that the claimant's memory is impaired, he has panic attacks and mood swings and he has racing thoughts. Dr. Taylor diagnosed the claimant as having schizoaffective disorder, bipolar type, impulse control disorder and anxiety. However, Dr. Taylor assessed the claimant's GAF score at 55, which is indicative of no more than a moderate impairment.
> . . .
>
> Dr. Taylor, the consultative examiner, prepared a medical source statement, noting that the claimant has a marked restriction in his ability to understand, remember and carry out detailed instructions, as well as in his ability to make judgments on work related decisions . . . . Dr. Taylor also noted that the claimant has a marked restriction in his ability to interact appropriately with the public, with coworkers and with supervisors, as well as in his ability to respond appropriately to work pressures and changes in a routine work setting. The undersigned gives limited weight to Dr. Taylor's assessment, to the extent that it supports the undersigned's finding that the claimant is limited to performing routine, repetitive tasks, as it is based upon the claimant's subjective allegations. Further, Dr. Taylor's assessment is inconsistent

> with the objective clinical findings noted throughout the longitudinal medical treatment records.

(R. 19.) The ALJ found this conclusion to be well supported by substantial evidence in light of the fact that (a) Dr. Taylor assessed claimant's GAF score at 55, which is indicative of no more than a moderate impairment; (b) Dr. Taylor's opinion was based, in part, upon the subjective history provided by the Plaintiff, which the ALJ found to be not entirely credible; and (c) there were objective clinical findings in the record contrary to Dr. Taylor's opinion. Plaintiff now challenges this decision on multiple grounds.

First, Plaintiff again asserts that the ALJ's reliance on the GAF scores was misplaced given the fact that they have been dropped from the DSM-V. As explained in detail above, however, an ALJ may still properly rely on GAF scores as evidence of a claimant's mental functioning.

Second, Plaintiff contends that the Magistrate Judge failed to identify any other inconsistencies in the record, aside from the GAF scores, to support her conclusion. Notably, however, the ALJ—whose decision is under review—specifically noted that Dr. Covaci's psychiatric evaluation showed that Plaintiff's affect was only slightly restricted, that Plaintiff's symptoms were improved with medication, and that Plaintiff was alert and oriented. Moreover, treatment notes revealed that Plaintiff reported doing "pretty well" and abruptly stopped attending therapy sessions. (R. 18.) In addition, the ALJ found that Dr. Taylor's report was based substantially on Plaintiff's own reporting, which the ALJ deemed not entirely reliable. Lastly, the ALJ referenced the opinion of the state agency psychiatric consultant—who opined that Plaintiff had only mild difficulties in many areas of mental functioning— but nonetheless

found that Plaintiff's impairments were more severe and limiting.

Finally, Plaintiff avers that Dr. Taylor's opinion that Plaintiff had marked limitations in his ability to respond to work pressures in a routine work setting was supported by the opinion of Dr. Covaci, who imposed the same limitation. As explained in detail above, however, the ALJ properly accorded little weight to this portion of Dr. Covaci's assessment based on the otherwise contrary evidence in the record.

In short, the Court thus finds no error in the ALJ's disregard of Dr. Taylor's opinion to the extent it imposed marked limitations on Plaintiff's functioning. This portion of Plaintiff's Objections is therefore overruled.

### B. Whether the ALJ Erred at Step Three of the Sequential Evaluation Process by Finding that Plaintiff's Severe Impairments Did Not Meet Listing 12.04

Plaintiff's next Objection concerns the ALJ's finding at step three of the sequential evaluation, wherein the ALJ opined that Plaintiff did not meet or medically equal the criteria of Listing 12.04. Listing 12.04 provides the listing criteria for affective disorders. A claimant will meet the listing only when the requirements of both "paragraph A" and "paragraph B" are satisfied, or when the requirements in "paragraph C" are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. A claimant will satisfy the "paragraph A" criteria through medically documented persistence of depressive syndrome, manic syndrome, or bipolar syndrome, each of which is characterized by its own list of symptoms. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04A. To meet the "paragraph B" criteria of Listing 12.04, a claimant must prove two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence and pace; or

repeated episodes of decompensation, each of extended duration.  20 C.F.R., pt. 404, subpt. P, app. 1, § 12.04(B).

With respect to the paragraph B criteria, the ALJ, in this case, found that Plaintiff had a mild restriction in activities of daily living, moderate difficulties in both social functioning and concentration, persistence, or pace, and no episodes of decompensation which have been of extended duration.  The Magistrate Judge found this decision to be well supported by substantial evidence.  Plaintiff now contends that the moderate limitations in both social functioning and concentration, persistence, or pace are undermined by the record.

As to social functioning, Plaintiff asserts that his Adult Function Report revealed that he rarely speaks to anyone on the phone, does not attend church, community centers, or sporting events, and does not participate in any social groups.  (R. 227.)  Further, Plaintiff indicated that he has a quick temper, which gets in the way of his building relationships and has resulted in him getting fired by past employers.  (Id.)  In addition, at the hearing, Plaintiff testified that he has gotten into a physical fight with a neighbor and received a citation for harassment.  (R. 54.)  Finally, Dr. Taylor determined that Plaintiff suffers from impulse control, has limited and poor social judgment, and has a marked impairment in his ability to interact appropriately with the public, supervisors, and co-workers due to his mental impairments.  (R. 360, 362.)  As such, Plaintiff claims that the evidence of record supports at least marked impairments in social functioning.

As noted by the Report and Recommendation, however, the ALJ properly observed that Plaintiff reported spending time talking with family members, attending summer parties at his sister's home, and speaking to his neighbors.  (R&R 12.)  Moreover, the ALJ appropriately

discounted Dr. Taylor's assessment as unsupported by the remainder of the evidence of record.

Finally, Dr. Corvaci expressly opined that Plaintiff had only a moderate limitation in his ability to interact with supervisors and co-workers—an opinion to which the Court gave weight in light of the doctor's ability to observe functional limitations caused by Plaintiff's mental impairments. (R. 19.) Accordingly, the Court finds the ALJ's decision in this area to be supported by substantial evidence.

As to the limitation on concentration, persistence, and pace, the ALJ found only moderate difficulties, as follows:

> The claimant alleged that he has difficulty remembering, completing tasks, concentrating, understanding and following instructions. He also alleged that he has difficulty handling stress . . . . However, the claimant testified that he spends a lot of time looking through his coin and stamp collections. He also testified that he uses the Internet.

(R. 16.) Plaintiff, however, asserts that this reasoning is flawed on several grounds. First, at the hearing, Plaintiff testified both that he maintained a stamp collection only before he became disabled and not during his disability, and that his mother helped him do research on the internet. Second, Plaintiff testified that he suffered from racing thoughts, panic attacks, hearing voices, and visual hallucinations. Third, both Dr. Taylor and Dr. Covaci opined that Plaintiff had marked limitations in this area. Finally, Plaintiff contends that both the ALJ and the Magistrate failed to cite any medical source that supports only a moderate limitation in concentration, persistence, and pace.

Again, however, Plaintiff's arguments are unfounded. As properly noted by the R&R, Plaintiff expressly testified at his hearing that he spends time working on his stamp collection "a lot, . . . moving stuff around and working on my displays." (R. 45.) His mother went on to note

that "once he starts working on it he might spend the whole afternoon on it and then maybe he won't work on it again for a while, you know, or look at them"—testimony that undermines a marked impairment in concentration. (R. 62–63.)  Moreover, contrary to his current argument, Plaintiff never testified that he needed his mother's help to use the internet.  Further, although Plaintiff complained of racing thoughts, panic attacks, and hallucinations, the ALJ properly explained why he did not give full credence to Plaintiff's statements.  In addition, as throughly discussed above, the ALJ appropriately rejected the marked limitations imposed by Drs. Covaci and Taylor.  Finally, and again contrary to Plaintiff's argument, the ALJ properly cited to evidence to support a no more than moderate limitation on concentration, persistence, and pace, including treatment notes showing limited symptoms, lack of continued treatment, moderate GAF scores, the opinion of the state agency consultant, and Plaintiff's own testimony.  While the ALJ could have properly concluded that a more restrictive limitation was appropriate, the ALJ's decision is supported by enough relevant evidence as a reasonable mind might accept as adequate to support his conclusion.

In any event, even if Plaintiff could have proven a marked limitation in this area, the record clearly provides substantial evidence for the ALJ's ruling that Plaintiff did not have marked limitations in *two* of the Paragraph B areas of functioning for Listing 12.04.  Therefore, Plaintiff's Objection on this ground is overruled.

      C.    **Whether the RFC and Hypothetical to the Vocational Expert Properly Reflected Plaintiff's Moderate Limitation in Concentration, Persistence, or Pace**

Plaintiff's final objection asserts that the ALJ failed to account for Plaintiff's moderate difficulty in concentration, persistence, or pace.  The ALJ's RFC limited Plaintiff to performing

routine, repetitive tasks.  Yet, according to Plaintiff, courts in the Third Circuit have refused to uphold an ALJ's ruling where a claimant either "often" had deficiencies or had "moderate" deficiencies in concentration, persistence, or pace, and where the the ALJ only limited the claimant to non-detailed, simple and routine and/or low stress work.  Plaintiff's argument is meritless.

While Plaintiff is correct that Third Circuit precedent requires an ALJ to include restrictions specific to nonexertional limitations, including concentration, persistence, and pace, Burns v. Barnhart, 312 F.3d 113, 123–24 (3d Cir. 2002); Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004), there is no indication that the ALJ, in this case, failed to include the appropriate limitations.  "Case law in this circuit makes clear that a restriction limiting an individual, e.g., to 'simple, routine tasks' or 'unskilled work,' is sufficient to accommodate *moderate* limitations in concentration, persistence and pace."  Shaffer v. Colvin, No. Civ.A.13-925, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) (emphasis in original) (citing Parks v. Comm'r of Soc. Sec., 401 F. App'x 651, 655–56 (3d. Cir. 2010) (RFC limiting claimant to performing simple, unskilled work adequate to account for moderate limitations in concentration, persistence, and pace); McDonald v. Astrue, 293 F. App'x 941, 946–47 (3d Cir. 2008) (RFC limiting claimant to "simple, routine tasks" adequate to accommodate moderate limitations in concentration, persistence, and pace); Menkes v. Astrue, 262 F. App'x 410, 412–13 (3d Cir. 2008) (no error in RFC restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence, and pace); Douglas v. Astrue, No. Civ.A.09-1535, 2011 WL 482501 (E.D. Pa. Feb. 4, 2011) (RFC limiting claimant to unskilled work adequately accounted for moderate limitations in concentration, persistence, or pace)); see also McBeth v. Colvin, No.

Civ.A.12-3583, 2013 WL 6061364, at *17 (E.D. Pa. Nov. 18, 2013) (finding that a hypothetical posed to the VE, which limited Plaintiff to unskilled work, with routine repetitive tasks and no more than occasional interaction with the public, co-workers and supervisors, adequately reflected the plaintiff's moderate difficulties with concentration, persistence, and pace).

Giving weight to the credible portions of Dr. Covaci's opinion and other portions of the record, the ALJ, in this case, indicated that Plaintiff was limited to performing routine, repetitive tasks and was restricted from both contact with the public and close cooperation with co-workers to achieve job tasks. Under the wealth of jurisprudence, the Court finds no error in such an RFC and, thus, overrules Plaintiff's Objection on this issue.

## IV.   CONCLUSION

As noted above, this Court's review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). Having thoroughly considered Plaintiff's Objections, together with the record in this case, the Court agrees with the Magistrate Judge that there is no basis on which to reverse or remand the ALJ's decision. Accordingly, Plaintiff's Objections are overruled and the Report and Recommendation shall be adopted in its entirety.

An appropriate Order follows.